**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

**J.M. HALEY CORPRATION,**

                               **Petitioner,**

                                                                  **Case No: 25-cv-3761**

              -against-

**INTERNATIONAL ASSOCIATION OF**
**SHEET METAL, AIR, RAIL, AND**
**TRANSPORTATION WORKERS' LOCAL 28,**
**AFL-CIO,**

                              **Respondent.**
-------------------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF
## <u>THE PETITION TO STAY ARBITRATION</u>


**MILMAN LABUDA LAW GROUP PLLC**

Joseph M. Labuda, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, New York 11042
(516) 328-8899 (office)
(516) 328-0082 (facsimile)

*Attorneys for Petitioner J.M. Haley Corporation*

i

## <u>TABLE OF CONTENTS</u>

Table of Authorities…………………………………………………………………...ii

Preliminary Statement……………………………………………………………...1

Facts…………………………………………………………………………………… 2

Legal Standards……………………………………………………………...……...7

Argument……………………………………………………………………………9

     **Point I**

     **J.M. Haley Will Suffer Per Se Irreparable Harm
     if Local 28 Forces it to Submit to Arbitration**……………………………………9

     **Point II**

     **J.M. Haley Has a Strong Likelihood of Success
     on the Merits, Because No Contractual Agreement
     Exists Between J.M. Haley and Local 28**…………………………………...…………10

          **A.**     **There Was No "Meeting of the Minds"
                Between Local 28 and J.M. Haley
                Concerning the PLA**……………………………………………………11

          **B.**     **The Local 355 Assent that J.M. Haley
                Signed Did Not Accept the Terms of the
                Proposed PLA, but Rather Operated as a
                Counter-offer to Modify an Essential Term
                of the Proposed PLA**……………………………………………………16

          **C.**     **Even Assuming, *Arguendo*, the City of New York
                and the BCTC Accepted J.M. Haley's Counter-proposal
                to Exclusively Employ Local 355 Members, Local 28
                Was Not a Party to that Agreement and Has No
                Standing to Bring Arbitration Against J.M. Haley**……………..18

**Conclusion**………………………………………………………………………………19

# TABLE OF AUTHORITIES

## Cases

*Almontaser v. N.Y.C. Dep't of Educ.*,
  519 F.3d 505 (2d Cir. 2008) .................................................................................. 8

*AT&T Techs. v. Communs. Workers of Am.*,
  475 U.S. 643 (1986)..................................................................................................

*Basank v. Decker*,
  449 F. Supp. 3d 305 (S.D.N.Y. 2020) .................................................................... 8

*Deutsche Bank Securities Inc. v. Roskos*,
  No. 15-cv-534, 2016 WL 9446863 (S.D.N.Y. August 4, 2016),
  *aff'd* 692 Fed. App'x 52 (2d Cir. 2017).................................................................. 9

*Express Indus. & Terminal Corp. v. N.Y. Dep't of Transp.*,
  93 N.Y.2d 584 (N.Y. 1999) ...................................................................................

*Int'l Dairy Foods Ass'n v. Amestoy*,
  92 F.3d 67 (2d Cir. 1996) ....................................................................................... 8

*John's Insulation, Inc. v. Siska Constr. Co., Inc.,*
  671 F. Supp. 289 (S.D.N.Y. 1987) .........................................................................

*Maryland Cas. Co. v. Realty Advisory Bd.*,
  107 F.3d 979 (2d Cir. 1997) ................................................................................ 8, 9

*MBIA Ins. Corp. v. Royal Bank of Canada*,
  706 F. Supp. 2d 380 (S.D.N.Y. 2009) ....................................................................

*Merrill Lynch Inv. Managers v. Optibase, Ltd.*,
  337 F.3d 125 (Cir. 2003) ...................................................................................... 10

*Mills v. Everest Reinsurance Co.*,
  410 F. Supp. 2d 243 (S.D.N.Y. 2006) ....................................................................

*Mt. Ararat Cem. v. Cem. Workers and Greens Attendants Union, Local 365*,
  975 F. Supp. 445 (E.D.N.Y. 1997) ...................................................................... 10

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*,
    673 F.3d 84 (2d Cir. 2012) ................................................................................................ 8

*Opals on Ice Lingerie v. Body Lines, Inc.*,
    320 F.3d 362 (2d Cir. 2003) ................................................................................................

*Tellium, Inc. v. Corning Inc.*,
    No. 03 Civ. 8487, 2004 U.S. Dist. LEXIS 2289 (S.D.N.Y. January 15, 2004)...................... 10

*Thomson-CSF, S.A. v. Amer. Arbitration Assoc.*,
    64 F.3d 773 (2d Cir. 1995) ................................................................................................

*United Steelworkers v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960)................................................................................................ 10

*XTI Aerospace, Inc. v. Chardan Cap. Mkts., LLC*,
    No. 1:24-cv-6590, 2025 WL 240973 (S.D.N.Y. January 17, 2025)...........................................

## **Statutes**

28 U.S.C. § 2201(a) ................................................................................................ 8

29 U.S.C. § 185................................................................................................ 1

9 U.S.C. § 4................................................................................................ 1,

## **Rules**

Fed. R. Civ. P. 65................................................................................................ 1

## PRELIMINARY STATEMENT

Petitioner, J. M. Haley Corporation ("J.M. Haley") submits this Memorandum of Law in support of its motion, pursuant to Labor Management Relations Act of 1947, 29 U.S.C. § 185 ("LMRA") and 9 U.S.C. § 4,  and Fed. R. Civ. P. 65, to stay an arbitration proceeding demanded by the Respondent, International Association of Sheet Metal, Air, Rail, and Transportation Workers' Local 28, AFL-CIO ("Local 28").   The arbitration proceeding has been tentatively scheduled for either August 20 or 22, 2025.  J.M. Haley initially seeks a temporary restraining order and/or preliminary injunction to temporarily stay the arbitration proceeding from occurring. J.M. Haley further seeks declaratory judgment and a permanent injunction to enjoin any further attempts to compel J.M. Haley into baseless arbitration.

Local 28 contends that J.M. Haley violated the terms of a project labor agreement ("PLA") by using members of Local 355 chapter of the International Union of Journeymen and Allied Trades ("Local 355") to perform work on a construction project covered by the PLA.  The PLA at issue, titled the "2020 Citywide Renovation PLA," was created by the New York City Department of Design and Construction ("DDC") and the Building & Construction Trades Council of Greater New York and Vicinity (the "BCTC").  The construction project at issue was a new maintenance & operations building for the New York City Department of Parks & Recreation at the City's Orchard Beach complex (the M&O Building Project).

A temporary restraining order ("TRO") and preliminary injunctive relief should be granted to prevent the arbitration demanded by Local 28 from occurring.  Ultimately, J.M. Haley should be granted declaratory judgment and permanent injunctive relief.  For a variety of reasons, there is no valid contract between J.M. Haley and Local 28.  J.M. Haley never assented to the terms of

the PLA at issue. Therefore, it cannot be compelled to participate in arbitration pursuant to that agreement.

First, there was never a "meeting of the minds" between J.M. Haley and Local 28 regarding the terms of the PLA. J.M. Haley was never a party to the PLA because it never consented to the requirement to employ Local 28 members to perform work on the M&O Building Project.

Second, when asked to sign a template Letter of Assent agreeing to the terms of the PLA—including exclusive use of Local 28 members—J.M. Haley responded instead with a counter-proposal to exclusively employ members of Local 355. Although the terms of the PLA, as initially written, proposed requiring J.M. Haley to agree to other union local collective bargaining agreements, including possibly Local 28, J.M. Haley rejected the template Letter of Assent and modified it with a counter-proposal allowing it to exclusively employ Local 355 members instead. The counter-proposal was never formally accepted by the NYC DDC, so J.M. Haley never became a party to any PLA involving the City of New York, the BCTC, or Local 28.

Third, even if J.M. Haley's counter-proposal is deemed to have been accepted, the resulting agreement between the NYC DDC, BCTC, and J.M. Haley did not involve Local 28. Therefore, Local 28 has no right to seek arbitration against J.M. Haley.

## **FACTS**

The J.M. Haley Corporation ("J.M. Haley") was founded in 1972 and is headquartered in Farmingdale, New York. The company specializes in designing, fabricating, and installing sheet metal ductwork for HVAC systems in large commercial and residential buildings. Declaration of Jim Haley in Support of Petition to Stay Arbitration ("Haley Dec."), ¶ 2.

J.M. Haley is a local employer. Since 2004, J.M. Haley has been a signatory to a collective bargaining agreement ("CBA") with the Local 355 chapter of the United Service Workers Union,

International Union of Journeymen and Allied Trades ("Local 355"). *Id.*, ¶ 4; *see also* Haley Dec., Exhibit A. Local 355 represents skilled sheet metal workers, among several other trades. Whenever J.M. Haley needs to employ skilled sheet metal workers on a particular job, it has an exclusive arrangement with Local 355. Haley cannot hire sheet metal workers from any other union. *Id.*, ¶¶ 5-6

In 2022, J.M. Haley was approached by a large HVAC contractor, Donnelly Mechanical ("Donnelly") regarding two renovation/construction projects located at the New York City Department of Parks & Recreation's facility at Orchard Beach (the "Orchard Beach Projects"). The first project was a renovation of the Pavilion facility at Orchard Beach (the "Pavilion Project"). The second project was the construction of a new maintenance & operations building for the Department of Parks & Recreation at Orchard Beach (the "M&O Building Project"). *Id.*, ¶ 7.

The Orchard Beach Projects were managed by the New York City Department of Design and Construction ("DDC"). The DDC hired a large building contractor, Gilbane, Inc., to serve as the prime contractor for the Orchard Beach projects. *Id.*, ¶ 8.

Donnelly specializes in the installation of large HVAC systems in buildings undergoing construction or renovation. Gilbane hired Donnelly to supervise the HVAC work on the two projects. *Id.*, ¶¶ 10-11.

Donnelly approached J.M. Haley in 2022 because it was interested in using J.M. Haley as a subcontractor to handle the fabrication and installation of the HVAC ductwork for the Orchard Beach Projects. J.M. Haley has a history of acting as a ductwork subcontractor for Donnelly. On several prior HVAC projects, Donnelly hired J.M. Haley for its expertise in building and installing ductwork. *Id.*, ¶¶ 12-13.

In 2022, Donnelly's Director of Construction, John Burrow, met with J.M. Haley's Vice President of Construction, Jim Haley, and J.M. Haley's Head of Estimating, John Cella, to discuss the Orchard Beach Projects. Mr. Burrow informed the J.M. Haley representatives that the Orchard Beach Projects would need to be paid at prevailing wage, and all subcontractors were required to employ "union" tradespeople. Mr. Burrow did not mention a requirement for employing tradespeople belonging to a specific union. At the meeting, the J.M. Haley representatives reminded Mr. Burrow that they exclusively employed sheet metal workers belonging to Local 355, and could not hire tradespeople belonging to any other sheet metal workers' union. Haley Dec., ¶¶ 13-19.

Mr. Burrow stated, in sum and substance, that as long as J.M. Haley was a "union" employer, it would be eligible to work on the Orchard Beach Projects regardless of which union chapter its tradespeople belong to. *Id.*

In December 2022, Donnelly invited J.M. Haley to bid on its ductwork subcontract for the Pavilion Project. J.M. Haley won the bid and executed a Purchase Order with Donnelly. *Id.*, ¶¶ 20-23.

On June 2, 2023, Donnelly invited J.M. Haley to bid on its ductwork subcontract for the M&O Building Project. Again, J.M. Haley won the bid and executed a Purchase Order with Donnelly. The boilerplate terms & conditions language on Donnelly's purchase orders were identical for the Pavilion Project and M&O Building Project. Neither purchase order mentioned any requirement to be bound by a Project Labor Agreement ("PLA") or a requirement to hire tradespeople from certain local union chapters. Thus, when J.M. Haley was hired for the M&O Building Project and entered into a binding subcontract with Donnelly, neither Donnelly nor J.M.

4

Haley contemplated that J.M. Haley's work would be performed by anyone other than sheet metal workers belonging to Local 355.  Id., ¶¶ 27-34.

J.M. Haley sheet metal workers, belonging to Local 355, began working on-site in the M&O Building on June 20, 2024.  *Id.*, ¶ 40.

On July 3, 2024, Mr. Haley received an e-mail from Mark Arias, an Assistant Project Manager at Donnelly.  It was a group e-mail sent to representatives of three different companies, including J.M. Haley, who were subcontracting with Donnelly on the M&O Building Project.  Mr. Arias' e-mail stated, "[p]lease see the attached documents that I need for you to complete for Certified Payroll. Please return this asap."  There were several attachments to the e-mail, including a one-page file titled "TEMPLATE – Project Labor Agreement – Letter of Assent.pdf." (Haley Dec., Exhibit E)  The one-page template Letter of Assent requested J.M. Haley to consent to the terms of a project labor agreement ("PLA") covering the M&O Building Project.  It also asked J.M. Haley fill in certain information about J.M. Haley's role in the M&O Building Project and the local union from which it was receiving its workers.  *Id.*, ¶¶ 42-43; Exhibit E.

J.M. Haley staff reviewed the PLA referenced in the Letter of Assent.  It was a PLA written by the New York City Department of Design and Construction ("DDC") and the Building & Construction Trades Council ("BCTC") of New York and Vicinity (the umbrella organization representing many other trade union chapters involved in the NYC metro area).  Haley Dec., Exhibit N. The PLA appeared to require J. M. Haley to be bound to other collective bargaining agreements (including possibly the Sheet Metal Workers' International Association, Local 28 ("Local 28").  Haley Dec., Exhibit N, Art. 4, Sec. 2, p. 17 of 116.   That was inconsistent with what Donnelly had told J.M. Haley before it submitted its bid for the M&O Project.

Local 28, like Local 355, represents sheet metal workers who can fabricate and install ductwork in large construction projects.  However, J.M. Haley was unable to affiliate with Local 28 or employ Local 28 members due to the exclusive nature of its CBA with Local 355.  In a telephone conversation with Mr. Arias at Donnelly in July 2024, J.M. Haley staff asked him for guidance regarding its use of Local 355 members on the M&O Building Project.  Mr. Arias said it would be fine if J.M. Haley exclusively used Local 355 members on the M&O Building Project. Haley Dec., ¶¶ 48-50.

Accordingly, J.M. Haley wrote "Local 355" in the blank space on the form where contractors report the union(s) whose members they hired to work on the M&O Beach Project. On or about July 24, 2024, J.M. Haley returned the completed assent form—listing Local 355 as its affiliated trade union—to Donnelly (the "Local 355 Assent Form).  *Id.*, ¶ 51.  J.M. Haley did not receive any objections from Gilbane, the City of New York, or the BCTC.  *Id.*, ¶ 53.  The Local 355 Assent was never countersigned by Donnelly, Gilbane, NYC or the BCTC and returned to J.M. Haley.  *Id.*, ¶ 52.  Over the next several months, J.M. Haley continued performing duct fabrication and installation work on the M&O Building Project and continued using tradespeople belonging to Local 355.  When J.M. Haley submitted Certified Payroll Reports to Donnelly and Gilbane to report its workers' hours and rates of pay, those forms clearly stated that J.M. Haley's tradespeople belonged to Local 355.  *Id.*, ¶¶ 55-58, 65-66.

J.M. Haley crews worked on the M&O Building Project from June 2024 through March 2025.  During that time, J.M. Haley never represented that it was employing anyone other than Local 355 members in its work crews.  It did so because it was operating under the assurance from Donnelly that it would be able to employ Local 355 members on that project.  *Id.*, ¶¶ 66, 68

By mid-February 2025, J.M. Haley's role in the M&O Building Project was nearly over. The ductwork installation was nearly complete. Our CPRs for the preceding months of work had been submitted and paid without any issues. Only a few final tasks remained. *Id.*, ¶ 70.

On or about February 14, 2025, J.M. Haley received a copy of a Step 1 written grievance filed by attorneys representing Local 28. The grievance claimed that J.M. Haley had violated the PLA by "failing to employ Local Union 28 members to perform covered work" at the M&O Building Project, and it claimed the PLA made us liable to Local 28 to wages and benefits for all hours of work performed on our behalf by Local 355 members at the M&O Building. From the commencement of work in June 2024 through the completion of the project in March 2025, J.M. Haley paid out approximately $55,000 in overall labor costs on the M&O Building Project, including Building Project, representing approximately $44,700 in wages and approximately $10,200 in supplemental benefits contributions in accordance of of the prevailing wage rates. *Id.*, ¶¶ 72, 69.

On or about March 4, 2025, Local 28 filed a Step 2 grievance against J.M. Haley seeking the same damages. J.M. Haley did not respond to either grievance, because it did not recognize Local 28's standing to bring a grievance against it. *Id.*, ¶¶ 75-76.

On June 17, Local 28 filed a Demand for Arbitration seeking "wages, benefits, and all other available relief to remedy the situation." *Id.*, ¶ 77. The arbitration is currently scheduled for either August 20 or August 22, 2025. Affirmation of Joseph Labuda, Esq., ¶ 4.

## LEGAL STANDARDS

The requirements for obtaining a TRO and preliminary injunction are well-established. "A plaintiff seeking a temporary restraining order must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

balance of equities tips in his favor, and that an injunction is in the public interest." *Basank v. Decker*, 449 F. Supp. 3d 305, 310 (S.D.N.Y. 2020) (citations omitted). A showing of "irreparable harm" is "perhaps the single most important prerequisite" for obtaining TRO relief. *Id.*

The general standard for issuing a preliminary injunction requires that the movant show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Maryland Cas. Co. v. Realty Advisory Bd.*, 107 F.3d 979, 984 (2d Cir. 1997) (quoting *Int'l Dairy Foods Ass'n v. Amestoy,* 92 F.3d 67, 70 (2d Cir. 1996)). "The district court has wide discretion in determining whether to grant a preliminary injunction." *Almontaser v. N.Y.C. Dep't of Educ.*, 519 F.3d 505, 508 (2d Cir. 2008).

As fully outlined below, J.M. Haley fully satisfies the requirements for the issuance of a TRO and preliminary injunction.

Regarding J.M. Haley's motion for declaratory judgment, "District courts enjoy broad discretion under the Declaratory Judgment Act to grant or deny declaratory relief." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 106 fn. 7 (2d Cir. 2012) (citing 28 U.S.C. § 2201(a) (the court "may declare the rights and other legal relations of any interested party such declaration, whether or not further relief is or could be sought")). "A district court should entertain the request for a declaratory judgment if either 'the judgment will serve a useful purpose in clarifying and settling the legal relations at issue' or 'it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *XTI Aerospace, Inc. v. Chardan Cap. Mkts., LLC*, No. 1:24-cv-6590, 2025 WL 240973, at *19 (S.D.N.Y. January 17, 2025) (quoting *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 96 (2d Cir. 2023)).

Finally, "'[t]o obtain a permanent injunction, a plaintiff must succeed on the merits and show the absence of an adequate remedy at law and irreparable harm if the relief is not granted.'" *Id.* (quoting *Deutsche Bank Securities Inc. v. Roskos*, No. 15-cv-534, 2016 WL 9446863, at *3 (S.D.N.Y. August 4, 2016), *aff'd* 692 Fed. App'x 52 (2d Cir. 2017)).  Permanent injunctions are appropriate where a petitioner "'would be irreparably harmed by being forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable.'" *Id.* (quoting *Maryland Cas. Co.*, 107 F.3d at 985).

In this matter, J.M. Haley seeks declaratory relief confirming that it was never a party to the PLA and therefore has no obligation to arbitrate with Local 28 over an alleged breach of the PLA.

## ARGUMENT

### POINT I

### J.M. HALEY WOULD SUFFER PER SE IRREPARABLE HARM IF LOCAL 28 FORCES IT TO SUBMIT TO ARBITRATION

J.M. Haley's petition to stay arbitration arises from a Demand for Arbitration issued by Local 28 pursuant to a project labor agreement ("PLA").  However, J.M. Haley was never a party to the PLA giving rise to Local 28's Demand for Arbitration.  Forcing J.M. Haley to arbitrate against Local 28 would therefore result in *per se* irreparable harm to J.M. Haley.  Because the arbitration at issue is scheduled for August 20 or August 22, 2025, J.M. Haley respectfully requests a TRO and/or preliminary injunction to prevent the arbitration from going forward until the dispute over contractual privity is resolved.

"Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *United Steelworkers v. Warrior & Gulf Navigation*

9

*Co.,* 363 U.S. 574, 582 (1960).  A party is irreparably harmed by being forced into an arbitration process if it did not contractually consent to submit grievances to arbitration.  *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (Cir. 2003).  A party therefore suffers "per se irreparable harm" where that party is compelled to arbitrate a matter despite it not being a party to the agreement giving rise to the arbitration demand.  *Mt. Ararat Cem. v. Cem. Workers and Greens Attendants Union, Local 365*, 975 F. Supp. 445, 447 (E.D.N.Y. 1997); *Tellium, Inc. v. Corning Inc.*, No. 03 Civ. 8487, 2004 U.S. Dist. LEXIS 2289, at *8 (S.D.N.Y. January 15, 2004); *see also Spear, Leeds & Kellogg v. Central Life Assurance Co.,* 879 F.Supp. 403, 404 (S.D.N.Y. 1995), *rev'd on other grounds,* 85 F.3d 21 (2d Cir. 1996) (holding that compelling arbitration of matter not properly subject to arbitration constitutes "per se irreparable harm").

Without intervention by this Court, J.M. Haley will be required to suffer the irreparable harm of having to arbitrate matters over which the arbitrator has no jurisdiction.  J.M. Haley would be required to expend time and personnel preparing and defending for an arbitration which Local 28 has no legal right to bring.  As a result, J.M. Haley would suffer *per se* irreparable harm.

## POINT II

### J.M. HALEY HAS A STRONG LIKELIHOOD OF SUCCESS ON THE MERITS, BECAUSE NO CONTRACTUAL AGREEMENT EXISTS BETWEEN J.M. HALEY AND LOCAL 28

To establish a likelihood of success on the merits, a movant "need not show that success is an absolute certainty.  He need only make a showing that the probability of his prevailing is better than fifty percent.  There may remain considerable room for doubt." *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985).  As detailed below, J.M. Haley can demonstrate a likelihood of success on the merits for multiple reasons, all of which are rooted in the theory that no contractual privity ever existed between Local 28 and J.M. Haley.

## A.    There Was No "Meeting of the Minds" Between Local 28 and J.M. Haley Concerning the PLA.

In this case, J.M. Haley has no obligation to arbitrate because there is no contractual privity between J.M. Haley and Local 28.[1]  J.M. Haley is not a party to the PLA because it never achieved a "meeting of the minds" regarding the obligation to exclusively employ sheet metal workers belonging to Local 28 on the M&O Building Project.  *See Tile Setters & Tile Finishers Union, Local Union No. 7 v. Speedwell Design/BFK Enter., LLC*, No. 06-cv-5211, 2009 U.S. Dist. LEXIS 27270, at *29-30 (E.D.N.Y. March 31, 2009) (holding that association collective bargaining agreement did not bind employer who never executed the agreement and never provided any assent to be bound by the terms of the agreement).  It is a basic tenet of contract law that, in order to be binding, a contract requires a "meeting of the minds" and "a manifestation of mutual assent." The manifestation of mutual assent must be sufficiently definite to assure that the parties are truly in agreement with respect to all material terms. *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288-289 (2d Cir. 2019) (quoting *Express Indus. & Terminal Corp. v. N.Y. Dep't of Transp.*, 93 N.Y.2d 584, 589 (N.Y. 1999); *Opals on Ice Lingerie v. Body Lines, Inc.*, 320 F.3d 362, 372 (2d Cir. 2003) ("Under New York contract law, the fundamental basis of a valid, enforceable contract is a meeting of the minds of the parties.  If there is no meeting of the minds on all essential terms, there is no contract. This is because an enforceable contract requires mutual assent to the essential terms and conditions thereof.") (quoting *Schurr v. Austin Galleries of Illinois, Inc.*, 719 F.2d 571, 576 (2d Cir. 1983)).

---

[1] The issue of whether J.M. Haley is bound to any contractual agreement with Local 28 must be decided by the court—not an arbitrator.  Under 9 U.S.C. § 4, a party may challenge whether it is subject to an arbitration agreement and seek a stay of the arbitration in Court.  *See* 9 U.S.C. § 4; *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 208 (1991) ("Whether or not a company is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court, and a party cannot be forced to 'arbitrate the arbitrability question.'"); *Abram Landau Real Estate v. Bevona*, 123 F.3d 69, 73 (2d Cir. 1997) ("When parties disagree about whether they ever entered into an arbitration agreement, a court decides that issue . . . .").

In or around 2020, the New York City Department of Design and Construction ("DDC" and the Building & Construction Trades Council of Greater New York and Vicinity (the "BCTC") executed a Project Labor Agreement (the "PLA") to apply to certain City-managed public works construction projects. Haley Dec., Exhibit N, p. 1 of 116; p. 55 of 116. The PLA was an agreement between the BCTC and the City of New York. Neither J.M. Haley nor Local 28 were participants in negotiating the terms of the PLA.

By applying the PLA to the M&O Building Project at Orchard Beach, the DDC anticipated that members of various local unions would perform the work on that project. *Id.* at Art. 4, Sec. 2, p. 17 of 116. In return, the unions accepted set wages and agreed not to strike. The PLA included a template Letter of Assent for various union chapters and contractors to indicate they agreed to its terms. *Id.*, p. 95 of 116. Local 28 agreed to be bound by the terms and conditions of the PLA without condition and signed an assent form to that effect. *Id.*, p. 85 of 116. On the other hand, J.M. Haley had no such intent to be bound to the PLA as negotiated between NYC DDC and BCTC. J.M. Haley was allowed to begin work on the M&O Beach Project before signing a Letter of Assent. At no time before starting work on the M&O Beach Project did J.M. Haley ever affirmatively indicate its assent to the terms of the PLA. Haley Dec., ¶¶ 18, 39.

In July 2024, Donnelly Construction, who hired J. M. Haley to fabricate and install HVAC ductwork on the M&O Building Project, for the first time presented J.M. Haley with a Letter of Assent template. Haley Dec., ¶ 43. However, J.M. Haley protested signing the Assent since it was a signatory to a collective bargaining agreement with Local 355 and was required to employ Local 355 members for work such as the M & Building Project. Therefore, J.M. Haley told Donnelly that it could not sign the Letter of Assent template as written because it was required to employ Local 355 members and could not use Local 28 members as envisioned in the PLA. Haley

12

Dec., ¶ 49.  Donnelly agreed to permit J.M. Haley to use Local 355 members on the M&O Building Project and directed J.M. Haley to indicate on the Letter of Assent that it was employing Local 355 members ("Local 355 Assent").  *Id.*, ¶¶ 50 and Exhibit F.  It was understood that J.M. Haley would be permitted to employ Local 355 workers on the M&O Building Project.

Based on the above, it is clear that Local 28 and J.M. Haley had different understandings of who was permitted to perform work on the PLA.  Local 28 clearly believed that any sheet metal work on the M&O Building Project needed to be performed by Local 28 members.  In contrast, J.M. Haley asserted, based on information it received from Donnelly, that it could exclusively employ Local 355 members.  *See* Haley Dec., Exhibit F.  Due to those differences in understanding, there was no meeting of the minds that would contractually bind Local 28 and J.M Haley.

It is settled that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[2]  *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 648 (1986); *see Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) ("[T]he obligation to arbitrate remains a creature of contract.").  Indeed, "only signatories to an arbitration agreement are bound by its terms."  *ABM Indus. Grp., LLC v. Int'l Union of Operating Eng'rs*, No. 1:18-cv-10770, 2019 U.S. Dist. LEXIS

---

[2] There are only four recognized exceptions to the rule that parties can only be compelled to arbitrate pursuant to a valid contractual agreement.  None of them apply to this matter.  The four exceptions are: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil piercing/alter ego; and (5) estoppel.  *ABM Indus.*, 2019 U.S. Dist. LEXIS 130311, at *6-7.  None of those exceptions are applicable in this matter.  First, there was no incorporation by reference because there were no side agreements executed by Haley and Local 28.  The arbitration provision Local 28 is relying upon is party of the PLA covering the M&O Building Project.  Second, there was no assumption because Haley's conduct "did not manifest an agreement to arbitrate."  *See id.* at *10.  Indeed, the parties never communicated with each other regarding the PLA or any other subject regarding the M&O Building Project.  Third, the law of agency cannot bind Haley to the unsigned PLA because no person with apparent authority acted on behalf of Haley.  Fourth, the veil piercing/alter ego theory is inapplicable because Haley is not a subsidiary of any other entity.

13

130311, at *6 (S.D.N.Y. August 2, 2019); *see Local Union No. 38 Sheet Metal Workers' Int'l Ass'n v. Custom Air Sys., Inc.*, 357 F.3d 266, 268 (2d Cir. 2004) ("Ordinarily, binding a non-signatory to a CBA runs afoul of the fundamental premise that 'a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit.'").

In this instance, Local 28's demand for arbitration is based on its implied belief that *both* it and J.M. Haley were parties to the PLA covering the M&O Building Project.  J.M. Haley does not dispute that the PLA has an arbitration clause requiring binding arbitration to resolve grievances between parties to the agreement.  However, in this instance, J.M. Haley was never a party to the PLA, because there was never a "meeting of the minds," between Local 28 (or any other party) and J.M. Haley, as is required to form a valid and enforceable contractual agreement.

Although the PLA purportedly requires sheet metal contractors working on the M&O Building Project to employ only tradespeople who are members of Local 28, J.M. Haley rejected that term in writing and employed Local 355 members instead and signed the Local 355 Assent. Haley Dec., Exhibit F.  Furthermore, J.M. Haley was permitted to continue working on the M&O Building Project without any issues.  It continued to perform work and continued to be paid.  Local 28 cannot now claim J.M. Haley is bound by the PLA, because it never agreed to be bound by that agreement.

J.M. Haley made its lack of mutual assent clear on the Local 355 Assent it submitted, when requested to do so by Donnelly.  The Letter of Assent template sought J.M. Haley's assent with the terms of the PLA.  Haley Dec., ¶¶ 42-47 and Exhibit E.    However, J.M. Haley did not agree to those terms. Instead, on that form, in blank space marked "Local Union," J.M. Haley was asked to identify the local chapter union from which it intended to hire sheet metal workers to staff the

M&O Building Project and inserted Local 355. *Id.*, ¶ 51 and Exhibit F. At no time did J.M. Haley ever assent to the requirement to hire Local 28 members on the M&O Building Project.

It should be noted that during the M&O Building Project, J.M. Haley faced no opposition or consequences from refusing its refusal to sign the Letter of Assent template. It was still permitted to continue working without interruption. When it began working on the M&O Building Project in June 2024, J.M. Haley exclusively used tradespeople belonging to Local 355. There were no objections from Local 28 or any other signatory to the PLA. After J.M. Haley submitted the Local 355 Assent several weeks later in July 2024, it still received no objections. J.M. Haley continued working on the project for over seven months—using Local 355 members the entire time—and there were no objections or questions asked. When J.M. Haley filed Certified Payment Reports providing the dates and hours of work for its tradespeople, it identified them as belonging to Local 355. They were received without objection, and J.M. Haley was timely paid for its tradespeople's work. In sum, J.M. Haley never indicated a willingness to assent to the terms of the PLA. There was never a meeting of the minds between J.M. Haley and Local 28 or any other party. And throughout the scope of the M&A Building Project, it never acted in conformance with the terms of the PLA. It only employed Local 355 members, never Local 28 members.

Local 28 has no basis for filing a grievance in February 2025—after J.M. Haley's work on the M&O Building Project was substantially complete—alleging that J.M. Haley had breached the terms of the PLA by employing Local 355 members on the project. Consequently, it has no basis to demand arbitration as part of that grievance process.

**B.    The Local 355 Assent that J.M. Haley Signed Did Not Accept the Terms of the Proposed PLA, but Rather Operated as a Counter-offer to Modify an Essential Term of the Proposed PLA.**

Local 28 may contend that a "meeting of the minds" occurred when J.M. Haley signed and returned the Local 355 Assent, because the text of that document purports to accept the terms of the PLA. This is simply not the case. The Local 355 Assent that J.M. Haley signed and returned— at the direction of its contractor, Donnelly— contained a critical modification to the Letter of Assent template that created new conditions incompatible with acceptance of the proposed PLA. Haley Dec., Exhibit F. For J.M. Haley, the Local 355 Assent operated not as an acceptance of the PLA but rather as a counter-offer to modify the PLA. Because the modifications proposed by J.M. Haley's counter-offer were never formally accepted by the NYC DDC, the BCTC, Local 28 or any other party, no contractual agreement was ever established. J.M. Haley never became a party to the PLA.

The Letter of Assent template contained a blank space, in which J.M. Haley was asked to provide the name of the local union chapter to which its employees belonged. Haley Dec., Exhibit E. J.M. Haley clearly replied "Local 355," rather than Local 28. Haley Dec. Exhibit F. That reply conditioned acceptance on a modification to an essential term of the PLA. Whereas the proposed terms of the PLA required all sheet metal contractors working on the M&O Building Project to employ Local 28 members, J.M. Haley's modified Local 355 Assent conditioned acceptance on its ability to employ Local 355 members. That was an essential proposed term that modified the original proposed PLA. Because it sought to modify an essential term, the Local 355 Assent acted as a counter-proposal to change the terms of the original proposed PLA.

The legal rules supporting this argument are well-established. For generations, courts have held, "[e]ven though a reply to an offer purports to accept [a contract], if it adds qualifications or

16

requires the performance of a new condition, it is not an acceptance but a counter-offer." *Banking and Trading Corp., v. Reconstr. Fin. Corp.*, 147 F. Supp. 193, 205-206 (S.D.N.Y. 1956) (citing 1 Restatement, Contracts § 60 and 1 Corbin, Contracts § 82).   According to prior S.D.N.Y. precedent, "New York follows the traditional common law view, which holds that an acceptance that is conditioned on terms at variance with those in the offer operates as a counteroffer and terminates the original offer." *Mills v. Everest Reinsurance Co.*, 410 F. Supp. 2d 243, 251 (S.D.N.Y. 2006) (citing *John's Insulation, Inc. v. Siska Constr. Co., Inc.,* 671 F. Supp. 289, 292 (S.D.N.Y. 1987)).

By law, J.M. Haley's counter-offer proposing to employ Local 355 workers on the M&O Building Project operated as a definitive rejection of the terms of the original proposed PLA.  "A seminal law of contracts is that a counteroffer constitutes a rejection of an offer as a matter of law. A rejection extinguishes an offer and renders any subsequent acceptance of the offer inoperative. Furthermore, this rule of rejection applies to a unilateral contract when the offeree submits a counteroffer." *Greystone v. Koninklijke Luchtvaart Maatschappij N.V.*, 815 F. Supp. 745, 751 (S.D.N.Y. 1993) (citations omitted).

J.M. Haley signed the modified Local 355 Asset and returned it to its contractor, Donnelly, on or about July 24, 2024.  Subsequently, it never received any response to its counter-offer from NYC DDC or the BCTC.  Neither of those entities formally accepted its counter-offer to employ Local 355 members.  As a result, no contractual relationship ever existed between J.M. Haley and the NYC DDC or the BCTC under the PLA.  J.M. Haley never became a party to the PLA, and therefore cannot be bound by the PLA's arbitration clause – not to Local 28 or anyone else.

C.    **Even Assuming, *Arguendo*, the City of New York and the BCTC Accepted J.M. Haley's Counter-proposal to Exclusively Employ Local 355 Members, Local 28 Was Not a Party to that Agreement and Has No Standing to Bring Arbitration Against J.M. Haley.**

In the alternative, assuming arguendo that either NYC DDC or the BCTC's course of conduct constitutes an acceptance of J.M. Haley's counter-proposal in the Local 355 Assent (which is not the case), Local 28 would still not have standing to compel J.M. Haley to arbitration. By rejecting the proposed PLA (which presumably listed Local 28 as the exclusive union for sheet metal workers) and counter-proposing a new agreement (in which J.M. Haley was permitted the exclusive use of Local 355 sheet metal workers), if accepted, would result in an entirely new agreement between NYC DDC, the BCTC and J.M. Haley which included Local 355 but excluded Local 28.

The resulting new and distinct contractual agreement would not involve Local 28. By permitting J.M. Haley to use Local 355 as its exclusive union for sheet metal workers, there was no place for Local 28 as a party in the resulting agreement. Thus, an acceptance of the counter-proposal essentially produced a separate agreement, involving only J.M. Haley, NYC DDC, and the BCTC, to which Local 28 was *not* a signatory. Because Local 28 was not a party to the agreement between J.M. Haley and the NYC DDC and BCTC resulting from J.M. Haley's counter-proposal, it lacks any basis or standing to assert a Demand for Arbitration against J.M. Haley. *Thomson-CSF, S.A. v. Amer. Arbitration Assoc.*, 64 F.3d 773, 779 (2d Cir. 1995) (a signatory to a contract cannot compel a non-signatory to submit to arbitration); *see also MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 396 (S.D.N.Y. 2009) (a non-signatory to an agreement cannot be held liable for a breach of the agreement).

Furthermore, if J.M. Haley's counter- proposal was, in fact, accepted, J.M. Haley would not be a party to the PLA to which Local 28 agreed to be bound. Local 28's agreement with NYC

18

DDC and the BCTC would be a separate and distinct agreement from J.M. Haley's agreement. Either way, in such a situation, J.M. Haley and Local 28 would not be in privity of contract. Therefore, Local 28 cannot compel J.M. Haley to arbitrate any dispute because it never contractually agreed to do so with Local 28.

## **CONCLUSION**

Because J.M. Haley is likely to succeed in the merits of its claim, and will suffer per se irreparable harm from being forced to arbitration, the Court should grant its motion to stay the arbitrations with a TRO and/or preliminary injunction. *See Marchetti's Beromun Aktiengesellschaft v. Societa Industriale Agricola*, 471 F. Supp. 1163, 1172 (S.D.N.Y. 1979) (denying application for order directing arbitration where "there was no valid agreement to arbitrate"). Furthermore, based on the facts presented herein, the Court should grant declaratory judgment confirming that J.M. Haley was not a party to the PLA and had no contractual privity with Local 28. On that basis, the Court should also issue a permanent injunction against Local 28 compelling J.M. Haley to participate in arbitration.

Dated: Lake Success, New York
     July 17, 2025

**MILMAN LABUDA LAW GROUP PLLC**

/s/ Joseph M. Labuda
Joseph M. Labuda, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, New York 11042
(516) 328-8899 (office)
(516) 328-0082 (facsimile)

*Attorneys for Petitioner J.M. Haley Corporation*

19